IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **J & J SPORTS PRODUCTIONS INC.,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GJH-16-3767 |
| **RIO BRAVO, LLC,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

J & J Sports Productions, Inc. ("J & J" or "Plaintiff") filed this action against Defendant Rio Bravo, LLC,[1] alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, and the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 *et seq.*, and a common-law claim of conversion. *See* ECF No. 1. After the Defendant failed to answer, Plaintiff moved for entry of default, ECF No. 12, and the Clerk entered default on March 6, 2017. ECF No. 13. On August 11, 2017, J & J filed a Motion for Default Judgment seeking $2,000.00 in statutory damages pursuant to 47 U.S.C. § 605, $6,000.00 in enhanced statutory damages pursuant to 47 U.S.C. § 605, and attorneys' fees and costs in the amount of $3,563.00, for a total of $11,563.50. ECF No. 14 at 2; ECF No. 18-1.[2] On December 15 and 20, 2017, the Court issued Letter Orders asking Plaintiff to submit additional information regarding its attorney's fees, ECF No. 15, ECF No. 17, which Plaintiff provided on December 19 and 22, 2017, ECF No. 16, ECF No. 18. For the following reasons, Plaintiff's

---

[1] Plaintiff originally named Dong Ki Kim as a defendant, but voluntary dismissed him on February 6, 2017. *See* ECF No. 11.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Motion, ECF No. 14, will be granted in part.

I.     **BACKGROUND**

Plaintiff J & J contracted to hold "the exclusive nationwide television distribution rights to the *Manny Pacquiao v. Chris Algieri, WBO Welterweight Championship Fight Program*," (the "Program"). ECF No. 1 ¶ 8. The telecast rights held by Plaintiff "included all under-card bouts and fight commentary encompassed in the television broadcast of the event . . ." *Id.* Plaintiff then entered into sublicense agreements with various commercial entities throughout North America, including Maryland, permitting them to publicly exhibit the Program in their establishments. *Id.* ¶ 9. Plaintiff employed a private investigator, Jonathan Martin, to ensure that the Program was not being unlawfully exhibited by entities that did not purchase the rights to broadcast the Program. *Id.* ¶ 12.. Plaintiff has alleged that Defendant televised the Program at its commercial establishment on Saturday, November 22, 2014, without purchasing a license to broadcast the Program. ECF No. 1 ¶¶ 11–12.

Martin declared via sworn affidavit that he entered the Rio Bravo Pastera Restaurant in Hyattsville, Maryland at 12:12 AM on November 23, 2014, the night the Program was broadcast. ECF No. 1-2 at 3. Martin observed the Program being displayed on a projection screen, and approximated the capacity of the establishment to be 100 people. ECF No. 1-2 at 3–4. Martin declared that he took three separate head counts, counting 65, 73, and 75 individuals present in the establishment at different times. ECF No. 1-2 at 4. Martin attests that he left at approximately 12:25 AM. *Id.* at 4. Plaintiff's Rate Card states that the fee for an establishment ranging from 0-100 people is $2,000.00. ECF No. 14-4 at 1.

Plaintiff filed the instant complaint on November 21, 2016, ECF No. 1, and served the Defendant on December 14, 2016, ECF No. 5, which meant that, by rule, an answer was due by

January 4, 2017. ECF No. 12 at 1. Defendant did not timely respond, and in response to a motion filed by Plaintiff, on March 6, 2017, the Clerk of the Court entered default against the Defendant. ECF No. 12; ECF No. 13. Plaintiff filed its motion for default judgment on August 11, 2017, ECF No. 14, and supplemented it twice at the Court's request. Plaintiff now requests $2,000.00 in statutory damages, $6,000.00 in enhanced damages, and $3,563.00 in attorneys' fees and costs. ECF No. 14 at 2.

## II. STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at *2 (D. Md. Oct. 25, 2011) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422. Fed. R. Civ. P. Rule 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In entering default judgment, a court cannot, therefore, award additional damages

"because the defendant could not reasonably have expected that his damages would exceed th[e] amount [pled in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F. Supp. 2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III. ANALYSIS

### A. Liability

47 U.S.C. § 605 prohibits the "unauthorized interception or receipt of certain 'radio' communications, including at least 'digital satellite television transmission,'" while § 553 proscribes "the unauthorized interception or receipt of certain cable communications[.]" *J & J Sports Prods., Inc. v. Intipuqueno, LLC*, No. DKC-15-1325, 2016 WL 1752894, at *2 (D. Md. May 3, 2016) (citing *MayrealII, LLC*, 849 F. Supp. 2d at 588 n.3). Plaintiff does not describe the manner in which Defendant intercepted the Program; however "[t]he complaint need not specify the precise method of interception, as pleading in the alternative is permitted." *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, No. CCB-11-3272, 2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012). In its Motion for Default Judgment, Plaintiff acknowledges that it cannot recover under both §§ 605 and 553 for the same conduct, and seeks recovery under § 605. ECF No. 14-2 at 5–6. Plaintiff's well-pleaded allegations establish that Defendant violated § 605 by alleging that Defendant "intercepted and displayed the Program at its establishment, without

4

authorization from [Plaintiff], on a particular date and at a particular time." *Joe Hand Promotions, Inc.*, 2012 WL 5879127, at *4.

In analogous cases, however, courts have "not allowed recovery for claims of conversion," because damages would not exceed recovery "under §§ 553 or 605 and would result in double-recovery." *J & J Sports Prods., Inc. v. Castro Corp.*, No. 11-CV-00188-AW, 2011 WL 5244440, at *3 (D. Md. Nov. 1, 2011) (citing *J & J Sports Prods., Inc. v. J.R'Z Neighborhood Sports Grille, Inc.*, No. 2:09-03141, 2010 WL 1838432, at *2 (D.S.C. 2010)). Furthermore, the claim of conversion has historically been an action "only for tangible property." *J & J Sports Prods., Inc. v. Plaza Del Alamo, Inc.*, No. TDC-15-0173, 2016 WL 153037, at *2 (D. Md. Jan. 12, 2016). Even though courts in Maryland "have expanded conversion to include intangible rights," these intangible rights only exist in specific circumstances, such as "when tangible documents evidence those intangible rights, and the tangible documents themselves have then been improperly taken." *Id.* Plaintiff has not alleged that Defendant "has unlawfully taken any of J & J's tangible property or tangible documents that evidence J & J's intangible rights." *Id.* Therefore, Plaintiff has not established a valid claim for conversion.

**B. Damages**

Plaintiff requests $2,000.00 in statutory damages and $6,000.00 in enhanced statutory damages under § 605. ECF No. 14 at 2. Plaintiff also requests attorney's fees and costs. *Id.* The Court addresses each in turn..

**1. Statutory Damages Pursuant to 47 U.S.C. § 605**

Plaintiff is seeking statutory damages in the amount of $2,000.00 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). ECF No. 14 at 2. In order to determine the appropriate amount of statutory damages, courts in this District have looked at the amounts the offending establishment would

5

have been required to pay to exhibit the boxing matches legally. *See J & J Sports Prods., Inc. v. Greene*, No. 10-0105, 2010 WL 2696672, at *12 (D. Md. July 6, 2010); *see also J & J Sports Prods., Inc. v. El Rodeo Rest., LLC*, No. PJM-15-172, 2015 WL 3441995, at *2–3 (D. Md. May 26, 2015) ("Consistent with prior case law in this District, the Court will accept the cost to purchase the Program as the direct loss to J & J . . ."). Here, this amount is based on the Rate Card provided by Plaintiff. ECF No. 14-4. The Rate Card states that an establishment that purchases the rights to broadcast the Program from J & J must pay $2,000.00 if the seating in the establishment is between 0-100 individuals. *Id.*

Plaintiff's private investigator was at Defendant's establishment while the Program was being exhibited. ECF No. 14-3 at 1. The private investigator states in his Affidavit that Defendant's establishment had a seating capacity of approximately 100 individuals. *Id.* at 2. Plaintiff's private investigator also states that he "counted the number of patrons three [] separate times [and] [t]he head counts were 65, 73, [and] 75" individuals. *Id.* The three head counts of the patrons at Defendant's establishment all fall within the 0-100 range provided in Plaintiff's Rate Card. ECF No. 14-4. Therefore, the Court will award Plaintiff the amount of $2,000.00 in statutory damages.

### 2. Enhanced Statutory Damages Pursuant to 47 U.S.C. § 605

Plaintiff additionally seeks enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which permits the court to award damages up to "an amount of not more than $100,000.00 for each violation of subsection (a) of this section" committed by the Defendant. Here, J & J is requesting a reduced sum of $6,000.00 for enhanced damages under 47 U.S.C. § 605. ECF No. 10 at 2. "In determining whether enhanced damages are warranted, other courts in this circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an

extended period of time; 3) substantial unlawful monetary gain; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *Quattrocche*, 2010 WL 2302353, at *2 (citing *Joe Hand Promotions, Inc. v. Bougie, Inc.*, No. 109-00590, 2010 WL 1790973, at *5 (E.D. Va. April 12, 2010)).

When applying the factors set forth in *Quattrocche*, it is evident that Defendant "intercepted and exhibited the Program willfully and for direct or indirect commercial advantage," ECF No. 14-2 at 7, because "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Castro Corp.*, 2011 WL 5244440, at *4 (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). On the other hand, Plaintiff concedes that "[t]here is no evidence that the Defendant in this matter has repeat[ ] violations or [had any] advertising associated with the broadcast of the Program, and the investigator did not pay a cover charge." ECF No. 14-2 at 7. Nevertheless, courts in this District have found that even when there is "no evidence of repeat violations, monetary gains, advertising of the broadcast, or the charging of an admission fee or premiums for food and drinks . . . some enhanced damages are proper to deter potential future unlawful uses of communications." *Sabor Latino Rest., Inc.*, 2014 WL 2964477, at *3; *see also J & J Sports Prods., Inc. v. KD Retail, Inc.*, No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Mar. 20, 2017); *Quattrocche*, 2010 WL 2302353, at *3. "Where there are no allegations of repeat behavior or otherwise egregious willfulness warranting harsh punitive damages, courts in this Circuit have varied in awarding enhanced damages from no enhanced damages to up to five times the statutory damage amount." *See e.g.*, *Quattrocche*, 2010 WL 2302353, at *3 (citation omitted) (awarding enhanced damages at five times the amount of statutory damages); *KD Retail, Inc.*, 2017 WL 1450218 (same); *Castro Corp.*, 2011 WL 5244440 (awarding enhanced

damages at three times the amount of statutory damages); *Sabor Latino Rest., Inc.*, 2014 WL 2964477 (same); *J & J Sports Prods., Inc. v. Drakeford*, No. 0:16-cv-01117-MBS, 2016 WL 5110170, (D.S.C. Sept. 21, 2016) (same); *Plaza Del Alamo, Inc.*, 2016 WL 153037 (awarding enhanced damages at two times the amount of statutory damages); *J & J Sports Prods., Inc. v. Shiva Foods, Inc.*, No. PWG-14-2049, 2015 WL 2452421, (D. Md. May 19, 2015) (same).

In *Sabor Latino Restaurant*, the court found that the defendant was liable for enhanced damages at three times the amount of statutory damages awarded where the defendant willfully, and for purposes of commercial advantage, broadcast J & J's Program without purchasing the rights to do so, the establishment was filled to nearly three-quarters capacity (154 individuals present in a 200-person establishment), and the Program was exhibited on six televisions; but the defendant was also a first time offender, did not charge a cover fee or premiums for food and drinks, and did not advertise the Program or receive substantial monetary gain. *See Sabor Latino Rest., Inc.*, 2014 WL 2964477, at *3. Similarly, here, Defendant willfully, and for purposes of commercial advantage, broadcast the Program without purchasing the rights to do so from Plaintiff, had its main television exhibiting the Program, and the establishment was at nearly three-quarters capacity; however, Defendant is allegedly a first time offender, did not charge a cover fee or premiums for food and drink, and did not advertise the Program. Therefore, just as in *Sabor Latino*, Defendant's intentional act of intercepting and exhibiting the Program without paying the fee is sufficient to warrant some enhanced damages, and Plaintiff will be awarded three times the amount of statutory damages, for a total of $6,000.00 in enhanced damages.

### 3. Attorneys' Fees and Costs

Under 47 U.S.C. § 605(e)(3)(B)(iii), J & J, as the prevailing party, is entitled to reasonable attorneys' fees and costs associated with this action. "The party seeking fees bears the

burden of proving the reasonableness of the amount sought." *J & J Sports Prods., Inc. v. Mumford*, No. DKC-10-2967, 2013 WL 210623, at *2 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009)). J & J initially submitted a document detailing the attorneys' costs and fees arising from this case in the amount of $3,657.50. ECF No. 14-7 at 1. In its "Affidavit and Certification of Attorney's Fees and Costs" and "Statement of Costs and Fees," Plaintiff's counsel had only provided the time allotment and the billing rate per hour for each item they are seeking recovery for. *See* ECF No. 14-7 at 2. The Court requested additional information regarding the years of experience of each attorney, which Plaintiff provided. ECF No. 16; ECF No. 18. Plaintiff declares that Plaintiff's counsel spent 6.75 hours working on the above-captioned action. ECF No. 18 at 1. Plaintiff's counsel further attests that three attorneys worked on this matter: Richard M. Kind with forty years of experience, Erica M. Cook with nineteen years of experience, and Ryan C. Kind, with two years of experience. ECF No. 16 at 1–2. Plaintiff also provided a breakdown of the time billed by each attorney. ECF No. 18-1. For attorneys Richard M. Kind and Erica M. Cook, counsel billed at a rate of $350 per hour; for Ryan C. Kind, counsel billed at a rate of $200 per hour. ECF No. 18 at 1. These rates fall within the range of presumptively reasonable rates identified in Appendix B of the Local Rules (D. Md. July 1, 2016) for attorneys with these respective lengths of experience.[3] Accordingly, Plaintiff shall be awarded $2,268 in attorneys' fees.

At this point, the Court cannot conclude that Plaintiff's request for costs is reasonable. Requests for costs are governed by Local Rule 109. *See, e.g., J & J Productions, Inc. v. Three Brothers of Hyattsville, LLC*, No. 15-1327, 2017 WL 3968477, *2 (D. Md. Sept. 8, 2017). Where

---

[3] Appendix B of the Local Rules provides, in relevant part: "Lawyers admitted to the bar for less than five (5) years: $150-225. . . . Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350. Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425. Lawyers admitted to the bar for twenty (20) years or more: $300-475." Loc. R. app. B (D. Md. July 1, 2016).

9

"any costs other than the fee for filing the action are being requested . . . [a]ny vouchers or bills supporting the cost being requested shall be attached as exhibits." Loc. R. 109(1)(b) (D. Md. July 1, 2016). Here, Plaintiff provides only a list of the various costs incurred. *See* ECF No. 14-7 at 1. These include: Investigator Fee ($650), Complaint Filing Fee ($400), Courier Service ($40), Attempted Service of Complaint ($65), Service of Process on Rio Bravo ($70), and Service of Process on Dong Ki Kim ($70). *Id.* Although not attached to its request for costs, Plaintiff has provided the Court with a bill for the service of Rio Bravo and the service of Dong Ki Kim. *See* ECF No. 5, ECF No. 6. As such, the Court will grant Plaintiff's request for costs for the service of process and the filing fee, in the total amount of $540. Plaintiff may submit a supplemental request for costs to the Clerk of the Court, with the appropriate attachments.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment will be granted. Judgment will be entered for Plaintiff in the amount of $10,808. A separate Order will follow.

12/27/2017
Date

GEORGE J. HAZEL
United States District Judge